GLADYS BAILY, complainant-appellant,

*v.*

J. CHESTER MASSINGER et al., defendants-respondents.

[Argued October 27th, 1947.   Decided January 29th, 1948.]

On appeal from a final decree advised by Vice-Chancellor Fielder, who rendered the following opinion:

"This case grows out of long drawn out and bitterly fought litigation over the estate of Anna E. Romaine, an aged woman who died December 26th, 1931.   She left a will by which she gave her estate to executors in trust to pay the net income therefrom to her daughter Kate R. Roberts for life and the residue upon her daughter's death, equally to J. Chester Massinger and Gladys Baily, and appointed the

three beneficiaries executors and trustees. The will was admitted to probate in the Prerogative Court January 6th, 1932, upon petition of the executors, and letters testamentary were granted to them.

"In or about May, 1932, Mrs. Roberts presented her petition to said court, through Merritt Lane her proctor, wherein she alleged that Mrs. Romaine lacked testamentary capacity and that the probated will was the product of fraud and undue influence exerted on the testatrix by Massinger and Miss Baily and that she (petitioner) had been fraudulently induced by Massinger to join in the application for its probate. She prayed that the order admitting the will to probate be revoked and that the will be offered for re-probate in solemn form before the Ordinary.

"Massinger and Miss Baily retained Robert H. McCarter to represent them and through his firm of McCarter & English, as proctors, answer to the petition was filed. She agreed to pay McCarter for his services to Massinger and herself and paid him a retainer of $1,000. Massinger (who is a member of the bar of this State) agreed to assist McCarter in any way McCarter wanted. The issue was presented to Vice-Ordinary Fallon for determination on many and voluminous *ex parte* affidavits, with the result that an order was entered July 27th, 1933, vacating the order admitting the will to probate, revoking the letters testamentary granted thereon and directing that the will be offered for probate in solemn form. *In re Romaine, 113 N. J. Eq. 477.* Appeal was taken from that order by Massinger and Miss Baily through McCarter as counsel and on January 5th, 1934, the opinion of the Court of Errors and Appeals was filed affirming the order. *In re Romaine, 115 N. J. Eq. 172-173.*

"Re-probate of the will was brought on before me as Vice-Ordinary and on the consent of Merritt Lane, proctor for Mrs. Roberts, and McCarter & English, proctors for Massinger and Miss Baily, the matter came on for hearing June 21st and 26th, 1934, and was continued by adjournment, but no further hearings were had before me until May 27th, 1935, when John J. Clancy (representing Lane) and Harry Weinberger, as proctors for Mrs. Roberts, and McCarter, as proctor

for Massinger and Miss Baily, appeared before me and informed me that the differences between the parties had been adjusted. Mr. Weinberger stated that he desired to call Mrs. Roberts to testify that she understood the terms of settlement and she thereupon testified in detail in McCarter's presence, that she understood the terms of the settlement in substance to be as I shall hereinafter set them forth, one of which was stated to be that Miss Baily was giving up her half interest in the estate by conveyance to trustees for Mrs. Roberts' benefit. At the conclusion of her testimony McCarter stated that he desired the settlement as testified to by Mrs. Roberts, to go through.

"On June 5th, 1935, an order on which McCarter, as proctor for Massinger and Miss Baily, and Lane, as proctor for Mrs. Roberts, had written their consent, was entered. That order admitted the Romaine will to probate, removed all three executors and appointed Massinger and John Grimshaw administrators and trustees with the will annexed. Attached to the order is a renunciation of executorship and trusteeship dated June 3d, 1935, signed by Mrs. Roberts, Miss Baily and Massinger.

"On May 14th, 1935, Miss Baily had executed a deed conveying to Mrs. Roberts and ———— trustee all her right, title and interest in the real property owned by the Romaine estate and also all other right, title and interest to which she might be entitled under the Romaine will. The deed was not recorded until November 10th, 1944, prior to which date the name of John J. Clancy had been written in the blank space as trustee. Miss Baily, by her bill of complaint filed April 6th, 1945, seeks to set that deed aside on the ground that at the time of its execution she was ill and in such bad mental condition that she was unable to transact any business or to understand the nature and effect of said deed; that it never was explained to her; that she received no consideration or benefit therefrom and that she was unaware of its terms until she read it at the register's office upon learning it had been lodged there for record.

"Miss Baily contends that in the latter part of 1933 she suffered a nervous breakdown as a result of her concern over

the health of her mother, and that she remained in bad mental condition until January 1st, 1938. I have no doubt that her nervous condition was also brought about by what had been detailed in affidavits filed in the contest over re-probate of the Romaine will to show that she had unduly influenced Mrs. Romaine to execute the will. She went to Florida in February, 1934, with her mother and returned to Paterson in the spring of that year. In September, 1934, she went to Newburgh, New York, where she remained in the home of a trained nurse until October, 1937. She continued to reside in Newburgh a few months longer and returned to her home in Paterson January 1st, 1938, completely restored to health. One reason why she went to Newburgh was to be near Judge Seeger, who had been a friend and adviser to Miss Baily and her family for years. He had been a member of the New York bar over 50 years and a justice of the New York Supreme Court and a member of the Appellate Division thereof. His professional ability and integrity were conceded. Throughout Miss Baily's stay at Newburgh he was her trusted friend and adviser whom she consulted on many occasions in connection with personal and business affairs. Before agreeing to retain McCarter to represent her in the Romaine will contest she sought and obtained Seeger's approval.

"It was Seeger who witnessed Miss Baily's signature to the deed she now disavows and who, as a New York notary public, certified that after he had made known to her the contents of the deed, she acknowledged she had executed it as her voluntary act and deed; yet Miss Baily testified that she went to Seeger's office at his request and remained there but a few minutes during which time he presented a paper and said 'This is a paper in reference to the Romaine matter. I advise you to sign it;' that she signed it and left, nothing more being said to her by Seeger with reference to the paper, which was the deed in question.

"After the hearing before me of June 26th, 1934, efforts were made by McCarter and Massinger to induce Miss Baily to appear at future hearings and testify on behalf of proponents of the will. She says she informed them it was impossible, because of her physical condition, to appear in court.

Massinger testified that on September 17th, 1934, he and McCarter called on Seeger at Newburgh and that the three went to see Miss Baily and conferred with her three-quarters of an hour; that McCarter and Seeger endeavored to persuade her to appear in court as a witness and she refused, stating she was unwilling to participate further in the case and desired to withdraw and transfer her interest to Mrs. Roberts if she (Baily) were relieved from payment of fees to McCarter and from payment of a note for $2,700 on which she and Massinger were joint makers and endorsers. Miss Baily admitted the meeting with the three men but said they were with her no loger than five minutes, and she denied Massinger's testimony about her desire to withdraw from the case. Massinger also testified that McCarter, Seeger and he called on Miss Baily again in November, 1934, and endeavored to persuade her to testify, and she again refused. Miss Baily testified to another five-minute visit paid her by the three men about March, 1935, when they again sought to induce her to testify, and that she had persisted in her refusal.

"When it became apparent that success in upholding the Romaine will was doubtful without Miss Baily's co-operation, negotiations for settlement of the litigation were undertaken by McCarter and Massinger and Lane, and throughout the progress of those negotiations McCarter and Massinger dealt with Seeger who was acting on Miss Baily's behalf. The true details of what transpired during the negotiations which resulted in the settlement are lost through the deaths of McCarter, Lane and Seeger, the three men who could be depended on to state them fully and accurately, and I am asked to decide the merits of the controversy over the validity of. the deed executed by Miss Baily on her prejudiced recollection of events which occurred more than ten years ago.

"In the absence of testimony by McCarter and Seeger, recourse was had to their files and to Massinger's files, from which files were produced and received in evidence many original and copies of letters which passed between those persons relating to proposed terms of settlement of the Romaine will contest. The earliest of those letters is dated October 18th, 1934, from McCarter to Massinger, wherein the writer

stated that shortly after 'our' visit to Newburgh he had written Lane 'we' had received Miss Baily's sanction to a proposed settlement, and the final letters are, from Massinger to Seeger dated June 1st, 1935, informing Seeger that settlement had been concluded May 27th and enclosing renunciation of executorship for Miss Baily's signature, and letter Seeger to Massinger dated June 3d, 1935, returning executed renunciation. That correspondence discloses that the settlement finally agreed on by McCarter and Seeger representing Miss Baily was this—the Romaine will was to be admitted to probate; the executors named therein to renounce; Miss Baily to execute a conveyance to trustees of her residuary interest under the will, such trust to be for the benefit of Mrs. Roberts and as security for payment of fees due Lane and Weinberger; Massinger to retain his half interest under the will with agreement to convey that interest to Mrs. Roberts within a specified time on payment to him of $20,000 which he claimed to be due him for various legal services he had performed and which included any further payment required by McCarter for his fee; Massinger to assume sole liability for McCarter's fees; Massinger to relieve Miss Baily from liability on a $2,700 promissory note on which he and Miss Baily were liable as joint makers and endorsers. That was the settlement as represented in substance to the court May 27th, 1935, to which McCarter stated his consent on behalf of Miss Baily.

"I have no doubt that from the fall of 1933 to January 1st, 1938, Miss Baily was an invalid and at times required the care and attention of a doctor and a nurse, but I do doubt that the nature and quality of her illness affected her mentally to the extent that she was unable to comprehend and understand transactions such as those with which she had become thoroughly familiar prior to 1933. She was a property owner and had been in the real estate business and had had considerable dealings with deeds and conveyances and she fully understood for what purpose they were executed and delivered. In a letter to Massinger under date of March 6th, 1935, Seeger stated, 'I am satisfied that if Miss Baily was well that she would prefer to fight it out and to have Mrs. Romaine's will carried out to the full, but in her present state of mind

that is out of the question. There are some days when she could testify as a witness and give a true statement of the facts as well as she ever could but there are some days when she could not do this and she does not wish to take the chance.'

"The question then is: Was Miss Baily's condition of mind May 14th, 1935, such as to render her incompetent to understand the nature and effect of the deed she executed that day? Various writings by Miss Baily during the period of her illness, all in firm handwriting indicating no trace of nervousness or illness, were received in evidence to show that her mental condition was good throughout the period covered by the dates thereof.

"(a) Copy of printed state of case on appeal from Vice-Ordinary Fallon's decision contains many marginal notes, comments and cross-references in her handwriting showing thought, judgment and concentrated thinking on her part. She could not recall the date those notes were made but the testimony shows they were made in the spring of 1934. and I believe they were made for the purpose of aiding McCarter in the approaching hearings for re-probate of the will.

"(b) Letter dated February 4th, 1934, to Massinger, giving him detailed instructions as to terms to be included in a certain lease she desired him to prepare.

"(c) Letter dated February 16th, 1934, to Massinger, enclosing the lease executed by her.

"(d) Telegram dated February 17th, 1934, to McCarter, excusing her delay on some subject because she was awaiting word from Massinger.

"(e) Letter dated May 1st, 1934, to McCarter, enclosing check for $318.20 (probably to pay for printing state of case) and obliquely urging him to dispose of the litigation.

"(f) Three poems, one dated June 5th, 1935, the second dated July 1st, 1935, and the third undated but probably written at approximately the same time as the other two. While not masterpieces of poetry they are written in poetic meter, are fairly well composed, show thought as well as sentiment and disclose the intelligent selection of words which rhyme.

"(g) May 23d, 1935, she executed renunciation of her right to administration on the estate of her mother (who had recently died), her signature being witnessed by Seeger.

"(h) June 3d, 1935, she executed renunciation of her right to act as executor under the Romaine will, her signature being witnessed by Seeger's sister. At an earlier date she had executed a similar renunciation but it was mislaid or lost.

"(i) June 11th, 1935, she signed a $10,000 bond conditioned for proper administration by her brother of her mother's estate. Her signature was witnessed by Seeger and attached to the bond is her affidavit stating that she is the owner of property in Passaic County worth $10,000.

"(j) From September 6th, 1934, to March 11th, 1935, both inclusive, she signed and endorsed monthly promissory notes in renewal of the $2,700 note on which she and Massinger were jointly liable as makers and endorsers.

"Besides the foregoing evidence as to Miss Baily's mental competency is the fact that McCarter saw and talked with her on three occasions between September, 1934, and March, 1935, and thus had ample opportunity to observe anything wrong with her mental condition. I do not believe he would have concluded or even undertaken negotiations for a settlement if he had the slightest doubt that she was fully competent to understand conditions offered for her approval or disapproval. There is the further fact that Seeger induced McCarter to deal and consult with him for many months in endeavoring to reach a settlement of the Romaine litigation, knowing that part of the settlement involved a deed from Miss Baily. I cannot believe Seeger would have been a party to such negotiations if he knew or had reason to believe Miss Baily to be incompetent and unable to understand the terms of a settlement. Nor can I believe Seeger would have permitted Miss Baily to execute two renunciations and an administrator's bond, all for filing in court, and thus become a party to perpetrating a fraud on the courts by documents he knew to be invalid. Nor can I believe he would have permitted Miss Baily to execute the deed in question without discussing it with her fully and making explanation of its purpose, nature and effect and without being sure that she

was competent to understand his explanation. Nor can I believe he would have certified her acknowledgment of the execution of that deed and delivered it if he had the slightest doubt of her ability to understand the nature and effect of her act and the purpose for which she performed it.

"What value had the assets of the Romaine estate which Miss Baily conveyed by her deed of May 14th, 1935, as of the date of that conveyance? It must be remembered that those assets then had but a contingent value to her; it depended first on the Romaine will being admitted to probate, toward which she was unwilling to contribute by testifying in support of the will, and second on her surviving Mrs. Roberts, when she says she (Miss Baily) was seriously ill and at times contemplated suicide. In May, 1935, the Romaine estate consisted of two parcels of real estate, an office building and a residence—there was no personal property. I decline to consider such statements respecting the value of that real estate as may appear in affidavits filed in 1932 in the proceedings to vacate the original probate of the will, first because those statements were not made by way of testimony before me with the opportunity for cross-examination, and second because it was in 1933 that the depression in real estate values really started and became more pronounced in 1935. The only testimony before me on the value of the Romaine estate properties and the liens or claims against those properties was given by Massinger and Clancy, and their testimony was not contradicted. That testimony was that on the office building there was a first mortgage of $100,000 and a second mortgage of $27,000 which was also a first lien on the residence property. The estate owed back taxes on the real property of $35,000 and inheritance taxes subsequently settled for $2,200. Commissions were owing to administrators *pendente lite* appointed after probate of the will had been revoked, and fees for their proctors, for which an allowance of $4,500 was subsequently made, and Massinger had a claim for $13,000 for legal service rendered to Mrs. Romaine and the estate was also liable on the $2,700 promissory note, thus making a total of $184,400 of existing liability against the real estate. Attempt to sell the office building

was made prior to 1935, but no offer could be obtained for it of a sum required to meet the estate obligations. The highest offer made for the office building prior to 1939 was $175,000, and title to the residence property was transferred in that year to Miss Baily and her sister on the basis of a valuation of $18,000, so that in 1935 the highest value of the two pieces of real property was $193,000, leaving but a theoretical balance of $8,600 to answer for liability for counsel fees to Lane, McCarter and Weinberger. If any actual balance remained after payment of those fees, Miss Baily's share thereof would be but one-half, if the will was admitted to probate and she survived Mrs. Roberts, so that by withdrawing from the will contest and conveying her contingent interest it would seem she profited by being relieved from her liability on the $2,700 note and from payment of further fees to McCarter.

"Miss Baily testified that after she had been completely restore1 to health in January, 1938, she realized that when incompetent she had executed a paper which had to do with the Romaine estate, but did not know what effect that paper had on the interest given her by the Romaine will. She knew in 1934 that probate of the will was contested, and if she did not know she had conveyed all her interest in the Romaine estate she must have been concerned in 1938 to know how the contest had terminated and whether she would be entitled to a half interest in the Romaine estate after Mrs. Roberts' death, given her by the will, but her story is that from 1938 until just prior to commencement of this suit in April, 1945, she never did ascertain what she had done, although she applied to McCarter, Seeger and Massinger, all of whom knew the facts but who gave her unsatisfactory or no answers. She talked with Mrs. Roberts on a few occasions after 1938 but never about her deed, although Massinger had told her she had conveyed her interest to Mrs. Roberts; nor did she apply to Mrs. Roberts' proctors for information. Even if it be assumed that she did not know all the terms of the deed she had executed, it is my opinion that the following resume of the evidence shows she had received information that she had executed a deed, which information required her to persist, either personally or through counsel, in further inquiries

and that had she persisted promptly she would have learned the complete facts in 1938.

"Early in January, 1938, Miss Baily went to the office of the register of the Prerogative Court and examined the files in the Romaine will contest. She says all she found there was her renunciation as executrix, but she must also have seen the order (to which her renunciation was attached) admitting the will to probate, removing the executors and appointing administrators with the will annexed. On her return from Trenton she met McCarter at the railroad station. Although she says she told him she had been to Trenton to look up the record regarding her interest in the Romaine estate, nothing else transpired at that meeting, but shortly thereafter she called at his office for the purpose of obtaining information about the Romaine litigation and she says he gave her none, telling her he was too busy to talk with her. He wrote her a letter under date of February 18th, 1938, wherein he gave her the facts of the settlement of the will contest as he then remembered them. The letter shows his memory slightly at fault on details, but he did state therein that she had executed a deed for the Romaine building. It seems strange that three years after the will had been admitted to probate, during which time McCarter had not heard from her about the Romaine estate, he would have written such a letter without her solicitation. That it was written at her request appears from the fact that therein he requested her to compensate him for his trouble in endeavoring to assemble the facts. I believe that letter was written in keeping with a promise made by McCarter the day she called at his office, and that she was expecting to and did receive it and opened it, but she now tells us that although the letter was received at her home it was misplaced and remained unopened until a few days before October 25th, 1946, when she produced it at a hearing in court. She says she never did anything further after her visit to McCarter's office to obtain from him the information she then desired. There was produced from McCarter's files and received in evidence a copy of a letter dated March 1st, 1938, written to her by McCarter's secretary which stated, 'The enclosed document is the one to which I

think you refer. I do not know whether it was recorded by Mr. Lane's office or not.' At the bottom of that copy appear in pencil the words 'Copy deed—Gladys Baily to Kate R. Roberts and ————.' Miss Baily did not deny receiving the original of that letter—she merely said she did not remember it. I believe she received it and that it was sent her because of her request either to McCarter or his secretary for a copy of the deed she had executed, and that the notation on the copy thereof was made by McCarter's secretary as a memorandum that the 'enclosed document' was a copy of the deed Miss Baily now disputes.

"Miss Baily had a conference with Massinger in the fall or later in the year 1938. He testified she then told him of her call on McCarter with reference to a deed she had signed in favor of Mrs. Roberts and that she had asked McCarter about undoing what she had done and that McCarter had told her she could do nothing, and that she had asked McCarter to send her a copy of her deed and a statement of what had happened and that he had done so. He further testified that she had asked him (Massinger) what he thought she could do about it and he told her that what she had done was voluntary on her part and with knowledge of the situation, and she did not dispute him. Miss Baily's testimony with reference to that conference with Massinger was that she asked him what had happened to her interest in the Romaine matter and that she told him she remembered signing a paper at Newburgh but did not remember what it 'conveyed' or what it did, and that Massinger told her she had transferred her interest to Mrs. Roberts to be held as security for Lane's fees. I cannot believe she would have been content with information that she had conveyed her interest in the Romaine estate as security for payment of an obligation with which she had no concern.

"Miss Baily also testified that she called on Seeger in the early part of 1938 and asked him what had happened to her interest in the Romaine estate and that he waved her to his files and told her she could examine them, but she did not. It should be noted here that with the original deed sent Seeger

for execution by Miss Baily he received and retained a copy of that deed.

"The uncontradicted testimony of Berliner, a man engaged in the real estate business, was that he talked with Miss Baily in the latter part of 1940 about the possibility of a deal for the Romaine building, telling her he understood she was one of the owners of it, and that she told him she had no interest in it and had transferred her interest to Mrs. Roberts.

"The testimony of Kraft, a witness produced by Miss Baily, was that she had told him in 1942 that she had conveyed her one-half interest in the Romaine estate by deed executed in Seeger's office but had not understood its effect when she signed it.

"Consideration of the foregoing testimony satisfies me that long before Miss Baily saw her recorded deed in the register's office she knew she had executed a deed conveying her interest under the Romaine will. With that knowledge it was her duty to assert the rights she now claims and to proceed promptly to enforce them. She waited, however, seven years and now death has removed McCarter, Lane and Seeger upon whose testimony the court could rely with confidence in determining where the truth in this controversy lies. I feel she is estopped and barred by laches from securing the relief she seeks here. Mrs. Roberts died the latter part of 1944 and her will devised to Massinger the half interest in the Romaine estate Miss Baily had conveyed to Mrs. Roberts. Relying on the validity of that conveyance Massinger had paid McCarter $2,500 in satisfaction of the fees Miss Baily owed him and he also relieved her from liability on the $2,700 note on which she and he were liable. After Mrs. Roberts' death and before bill filed herein he paid various sums of money in satisfaction of Mrs. Roberts' debts and to avoid threatened attacks on her will, for a total of $4,000.

"Miss Baily's delay in bringing this suit also affects prejudicially the rights represented by Clancy, trustee. Settlement of the Romaine litigation by admitting the Romaine will to probate involved surrender by Lane and Weinberger of their right to a substantial fee had they succeeded in

defeating the will, and by acceptance of Miss Baily's deed to a trustee as security for fees then due them they surrendered their lien on the cause of action. They were not shown to have had any information of Miss Baily's alleged defective mental condition and they relied on her deed as security for money due them, thus waiving their claim against Mrs. Roberts. Through the death of Lane and Weinberger (who died some time prior to filing of complainant's bill) their testimony to establish the amount of their fees is lost, and through long lapse of time presentation of other testimony to prove the debt due them from Mrs. Roberts would probably be difficult, if not impossible, and suit therefor might be barred by statutes of limitation.

"For Miss Baily it is urged that her deed is not legal or effective because of the blank space therein wherein the name of a trustee was inserted after its delivery. After that deed was executed it was delivered to one of Mrs. Roberts' proctors for her, and Mrs. Roberts testified before me that she had accepted it in settlement of her contest over probate of the Romaine will. When Miss Baily executed that deed all she was concerned with was the release of her half interest in the Romaine estate. She had no interest in the payment of fees to Mrs. Roberts' proctors and it was of no concern to her who was named in her deed to act as trustee for the purpose of securing payment of those fees. Insertion in the blank space of a trustee's name can have no effect on the validity of the deed as a conveyance of her interest in the Romaine estate.

"The bill of complaint will be dismissed."

*Messrs. Wall, Haight, Carey & Hartpence (Mr. William W. Shaw* and *Mr. Joseph A. Davis,* of counsel), for the appellant.

*Messrs. Ruback & Albach (Mr. Meyer E. Ruback,* of counsel), for the respondents J. Chester Massinger et al.

*Mr. Gerald T. Foley,* for the respondent John J. Clancy, trustee.

Per Curiam.

With the exception of the provision for counsel fees, the decree is affirmed, for the reasons expressed in the foregoing opinion of the learned Vice-Chancellor.

We are of the view that, in the special circumstances, no counsel fee should be assessed against appellant in favor of the respondents J. Chester Massinger and Ruth B. Massinger, his wife, and that the counsel fee assessed against appellant in favor of the respondent John J. Clancy should be reduced to $500; and the decree is modified accordingly.

*For affirmance*—Wachenfeld, J.   1.

*For modification*—The Chief-Justice, Bodine, Donges, Heher, Colie, Eastwood, Burling, Wells, Dill, Freund, McLean, Schettino, JJ.   12.